IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

)
BRENNAN CENTER FOR JUSTICE                            )
AT THE NEW YORK UNIVERSITY SCHOOL OF             )
LAW and DEFENDING RIGHTS & DISSENT,              )
                                                              )
            Plaintiffs,                                     )
                                                              )    No. 1:20-cv-00947
v.                                                            )
                                                              )
UNITED STATES FEDERAL BUREAU OF                  )
INVESTIGATION,                                          )
                                                              )
            Defendant.                                       )
_____)

## COMPLAINT

Plaintiffs Brennan Center for Justice at the New York University School of Law (the "Brennan Center") and Defending Rights & Dissent ("DRAD") (collectively "Plaintiffs") hereby allege as follows against Defendant the United States Federal Bureau of Investigation ("FBI"):

## INTRODUCTION

1.      This is an action for the production of public records and injunctive relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2.      On May 6, 2019, Plaintiffs sent a FOIA request to the FBI seeking records related to the formation and activities of the FBI's Foreign Influence Task Force ("FITF").

3.      Plaintiffs sought expedited processing for the FOIA records request under 6 C.F.R. §§ 5.5(e)(1)(ii) and (iii) and requested a fee waiver under 6 C.F.R. §§ 5.11(d) and (k).

4.      To date, the FBI has not released any records responsive to the FOIA request.

5.      Plaintiffs have exhausted their administrative remedies to enforce their rights under

FOIA and seek relief from this Court as a last resort to obtain information that should be publicly

available.

## PARTIES

6.      Plaintiff the Brennan Center, a 501(c)(3) organization, regularly publishes reports

on a wide range of U.S. policy issues, including counterterrorism and security.  The Brennan

Center has released over 40 publications in the form of reports in the last four years.  As such, the

Brennan Center meets the definition of an organization that is a "representative of the news media"

under 5 U.S.C. § 552(a)(4)(A)(ii)(III).  Recently, the Brennan Center published a report, several

fact sheets, and multiple articles on the intersection of national security and immigration policy.[1]

7.      Plaintiff DRAD, also a 501(c)(3) organization, is the publisher of the Dissent

NewsWire, an online publication that provides original civil liberties news reporting.  DRAD bases

---

[1] *See, e.g.*, *Social Media Surveillance by Homeland Security Investigations: A Threat to Immigrant Communities and Free Expression*, Brennan Ctr. for Justice (2019), https://www.brennancenter.org/our-work/research-reports/social-media-surveillance-homeland-security-investigations-threat; Raya Koreh, *Border Agents' Secret Facebook Group Highlights Social Media Vetting Risks for Immigrants*, Brennan Ctr. for Justice (2019), https://www.brennancenter.org/our-work/analysis-opinion/border-agents-secret-facebook-group-highlights-social-media-vetting-risks; Faiza Patel, *Stop Collecting Immigrants' Social Media Data*, Brennan Ctr. for Justice (2019), https://www.brennancenter.org/our-work/analysis-opinion/stop-collecting-immigrants-social-media-data; Tim Lau, *Flawed Terrorism Report Shows Administration's Skewed Priorities*, Brennan Ctr. for Justice (2019), https://www.brennancenter.org/our-work/analysis-opinion/flawed-terrorism-report-shows-administrations-skewed-priorities; Rachel Levinson-Waldman, *How ICE and Other DHS Agencies Mine Social Media in the Name of National Security*, Brennan Ctr. for Justice (2019), https://www.brennancenter.org/our-work/analysis-opinion/how-ice-and-other-dhs-agencies-mine-social-media-name-national-security; Harsha Panduranga, *Social Media Vetting of Visa Applicants Violates the First Amendment*, Brennan Ctr. for Justice (2019), https://www.brennancenter.org/our-work/analysis-opinion/social-media-vetting-visa-applicants-violates-first-amendment; Faiza Patel et al., *Social Media Monitoring*, Brennan Ctr. for Justice (2019), https://www.brennancenter.org/our-work/research-reports/social-media-monitoring.

its reporting on sources such as information received in response to FOIA requests, state-level

public records requests, and other similar requests.[2]  As such, DRAD also meets the definition of

an organization that is a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(III).

       8.      The Brennan Center and DRAD regularly write and publish reports addressing U.S.

policy on issues ranging from counterterrorism efforts to voting rights to campaign finance laws

and beyond, and they will continue to do so for the foreseeable future.  DRAD has engaged in

extensive first-hand reporting of the arrest and prosecutions of activists protesting the inauguration

of President Donald Trump on January 20, 2017, and has received an award from Project Censored

for its original reporting on the FBI's treatment of activists.[3]

       9.      Defendant FBI is a component of the United States Department of Justice ("DOJ")

and is an "agency" within the meaning of 5 U.S.C. § 552(f).

### JURISDICTION AND VENUE

       10.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and

28 U.S.C. § 1331.

---

[2] *See* News Release, Defending Rights & Dissent, DRAD, DC NLG FOIA Request Uncovers That DC Police Spend Over $300,000 in Weapons, Ammunition to Use Against Inauguration Day Protesters (Oct. 30, 2017), *available at*  https://rightsanddissent.org/news/drad-dg-nlg-foia-request-uncovers-dc-police-spent-300000-weapons-ammunition-use-inauguration-day-protesters/; Chip Gibbons, *Who is Robert Wells and Why Did The FBI Consider Him a National Security Threat?*, Defending Rights & Dissent (June 3, 2016), https://rightsanddissent.org/news/who-is-robert-wells-and-why-did-the-fbi-consider-him-a-national-security-threat/; Chip Gibbons, *Senate Passes Bill Aimed at Silencing Pro-Palestinian Activism on Campuses*, Defending Rights & Dissent (Dec. 6, 2016), https://rightsanddissent.org/news/senate-passes-bill-aimed-silencing-pro-palestinian-speech-campuses/.

[3] *See* Archive of J20 Articles, Defending Rights & Dissent, https://rightsanddissent.org/news/topics/free-speech-assembly/j20/ (last visited Jan. 22, 2020); Alexander Reid Ross, *Why is the FBI Harassing Activists in Cascadia?*, Defending Rights & Dissent (Jan. 5, 2015), https://rightsanddissent.org/news/why-is-the-fbi-harassing-activists-in-cascadia/.

11.      Venue is appropriate in this District under 5 U.S.C. § 552(a)(4)(B).

## BACKGROUND

12.      FBI Director Christopher Wray established the FITF in 2017 "to identify and counteract malign foreign influence operations targeting the United States."[4]  According to a 2018 press release, the "goal of these foreign influence operations directed against the United States is to spread disinformation, sow discord, and, ultimately, undermine confidence in our democratic institutions and values."[5]

13.      According to the FBI, "[o]ther influence operations by adversaries include:

    a.  "Targeting U.S. officials and other U.S. persons through traditional intelligence tradecraft[;]

    b.  "Criminal efforts to suppress voting and provide illegal campaign financing[; and]

    c.  "Cyber attacks against voting infrastructure, along with computer intrusions targeting elected officials and others[.]"[6]

14.      In January 2018, FBI official Jeffrey Tricoli announced that the FITF would alert social media companies and the public at large about foreign disinformation and social media manipulation.[7]  During the same public comments, Mr. Tricoli stated that the FBI was cognizant

---

[4] Press Release, FBI, The FBI Launches a Combating Foreign Influence Webpage (Aug. 20, 2018), https://www.fbi.gov/news/pressrel/press-releases/the-fbi-launches-a-combating-foreign-influence-webpage.

[5] *Id.*

[6] *Id.*

[7] Chris Strohm, *FBI Task Force to Expose Russian Social Media Manipulation*, Bloomberg (Jan. 10, 2018), https://www.bloomberg.com/news/articles/2018-01-10/fbi-plans-task-force-to-expose-russian-social-media-manipulation.

of potential First Amendment issues and did not intend to act as the "thought police."[8]  The FITF

was again in the news when Mr. Tricoli resigned in July 2018.[9]

15.      On August 2, 2018, Director Wray spoke about the FITF at a joint press conference

with former National Security Advisor John Bolton, former Director of National Intelligence Dan

Coats, then-Secretary of Homeland Security Kirstjen Nielsen, and General Paul Nakasone,

Director of the National Security Agency.[10]

16.      In prepared remarks delivered at the press conference, Director Wray stated that

"our adversaries' influence operations have encompassed a wide range of activities," including

"overtly and covertly manipulating news stories, spreading disinformation, leveraging economic

resources, and escalating divisive issues."[11]

17.      Director Wray stated that part of the FBI's strategy included cooperation with the

private sector, noting that "[t]his year, we've met with top social media and technology companies

several times.  We've given them classified briefings, and we've shared specific threat indicators

and account information, so they can better monitor their own platforms."[12]

18.      That press conference was held just days after Facebook removed 32 pages and

accounts it determined were engaged in "coordinated inauthentic activity."[13]  This included a

---

[8] *Id.*

[9] Emily Birnbaum, *FBI official overseeing election-meddling task force leaves agency: report*, Hill (July 16, 2018), https://thehill.com/policy/cybersecurity/397172-fbi-agent-in-charge-of-election-meddling-task-force-leaves-position.

[10] *See* Press Release, Federal Bureau of Investigation, FBI Director Christopher Wray's Statement at Press Briefing on Election Security (Aug. 2, 2018), https://www.fbi.gov/news/pressrel/press-releases/fbi-director-christopher-wrays-statement-at-press-briefing-on-election-security.

[11] *Id.*

[12] *Id.*

[13] Issie Lapowsky, *Fake Facebook Accounts Are Getting Harder to Trace*, Wired (July 31, 2018), https://www.wired.com/story/facebook-uncovers-new-fake-accounts-ahead-of-midterm-elections/.

controversial decision to remove the event page of an anti-racist rally that had a number of co-sponsors who were local, Washington, DC, anti-racist activists.[14]  When asked about the removal of the 32 pages and accounts, Director Wray declined to provide specifics.[15]

19.     In late August 2018, the FBI announced the creation of a webpage designed "to educate the public about the threats faced from disinformation campaigns, cyberattacks, and the overall impact of foreign influence on society."[16]

20.     The webpage describes the FITF's three-pronged approach to combat foreign influence as follows:

   a.   "investigations and operations," in which the FITF works with local field offices to "counter the extensive influence and operations of our foreign adversaries";

   b.   "information and intelligence sharing," in which the FITF and FBI coordinate with other intelligence agencies to "ensure a common understanding of the threat and a unified strategy to address it"; and

   c.   "private sector partnerships," in which the FITF engages strategically with private technology companies, including through "threat indicator sharing."[17]

21.     The FBI has disclosed little additional public information on the activities of the FITF since August 2018.

---

[14] Taylor Hatmaker, *Activists push back on Facebook's decision to remove a DC protest event*, TechCrunch (Aug. 1, 2018), https://techcrunch.com/2018/08/01/facebook-organizers-protest-no-unite-the-right-2/.

[15] *White House Daily Press Briefing* (Aug. 2 2018), available at https://www.c-span.org/video/?449335-1/intelligence-officials-reporters-election-security (relevant quotes start at 25 minutes and 30 seconds).

[16] Press Release, FBI, The FBI Launches a Combating Foreign Influence Webpage (Aug. 20, 2018), https://www.fbi.gov/news/pressrel/press-releases/the-fbi-launches-a-combating-foreign-influence-webpage.

[17] FBI, What We Investigate: Combating Foreign Influence, https://www.fbi.gov/investigate/counterintelligence/foreign-influence (last visited January 27, 2020).

22.     Given the FBI's (and others') acknowledgment of foreign attempts to influence U.S. elections in 2016, and the expectation that foreign adversaries will attempt to influence the upcoming election in 2020, as well as the importance of ensuring that activists, organizers, and other members of the public can continue to use social media for constitutionally protected activities without impediment, the FBI's efforts with respect to the FITF are of the utmost importance to the public.

23.     On May 6, 2019, Plaintiffs submitted a FOIA request to the FBI in order to elicit information about the FITF (the "FITF Request").

24.     The FITF Request sought the following records:[18]

a.  All communications between the FITF, or any FBI personnel acting on behalf of the FITF, and employees or representatives of social media platforms or networks, including but not limited to Facebook, Twitter, Instagram, YouTube, LinkedIn, and WhatsApp, relating to the FITF and/or its mission;

b.  All communications between the FITF, or any FBI personnel acting on behalf of the FITF, and private businesses concerning any product or service that searches, analyzes, monitors, or collects content posted on any social media platforms or networks relating to the FITF and/or its mission;

c.  All agreements between the FBI and/or FITF and private businesses relating to the FITF and/or its mission pertaining to any product or service that searches, analyzes, monitors, or collects content posted on any social media platforms or networks;

d.  All communications between the FITF, or any FBI personnel acting on behalf of the FITF, and state and local law enforcement relating to the FITF and/or its mission;

e.  Records reflecting the process for selecting social media accounts for monitoring or observation by the FITF, in connection with its mission, including key words or other search terms used in locating such accounts; and

f.  Policies, procedures, or guidelines related to the protection of the First Amendment rights of US persons in connection with the FITF and/or its mission, including documents, records, or contractual provisions provided to vendors or contractors.

---

[18] A true and correct copy of the FITF Request is attached hereto as Exhibit A.

25.     Plaintiffs intend to share with the public any information obtained from the FITF Request.

### AGENCY RESPONSE TO THE FOIA REQUEST

26.     The FBI first acknowledged receipt of the FITF Request in a May 22, 2019 letter, stating that Plaintiffs' fee waiver request was under consideration and providing an alternative fee schedule if the fee waiver request were to be denied.

27.     Following a telephone conversation between the FBI and counsel for Plaintiffs, the FBI sent a second letter on July 3, 2019, correcting the alternative fee schedule.

28.     Neither of the letters indicated the scope of the documents to be produced nor the FBI's rationale for any potential withholdings.  Nor did these letters provide an estimated timeline for the production of responsive documents.

29.     Almost five months elapsed without further response.  On October 3, 2019, Plaintiffs sent an email to the FBI requesting a status update regarding the FOIA Request.  The FBI sent a response by email the next day (the "Inquiry Response").

30.     The Inquiry Response stated, in part, that the FITF Request was in Initial Processing and that the FBI "do[es] not yet know into which track" the request would fall.  The Inquiry Response estimated that, "based on the average processing time for complex requests in the large processing track," *the FBI would complete action on this request 1,432 days from the date the FBI opened the FOIA Request, or sometime in mid-2022*.

31.     The Inquiry Response further noted that "once the search has been completed," Plaintiffs could request an updated completion date.  The Inquiry Response did not provide information on when the initial search would be completed.

**ADMINISTRATIVE APPEAL**

32.     On December 17, 2019, Plaintiffs sent an administrative appeal to the FBI's Office

of Information Policy requesting reversal of the Inquiry Response and further requesting disclosure

of all documents within the scope of the FITF Request.

33.     Pursuant to 28 C.F.R. § 16.8(a), the administrative appeal was timely submitted

within 90 calendar days of the Inquiry Response.

34.     Specifically, Plaintiffs' administrative appeal challenged:

a.  the FBI's failure to make a FOIA "determination" and provide responsive

documents within the statutory timeline, including the requested expedited

processing timelines;

b.  the FBI's constructive denial of Plaintiffs' FITF Request; and

c.  the FBI's overall pattern or practice of unreasonable delays in responding to FOIA

requests that will interfere with Plaintiffs' ability to promptly obtain non-exempt

records from the FBI in the future.

**AGENCY RESPONSE TO THE ADMINISTRATIVE APPEAL**

35.     The FBI did not respond to the administrative appeal within the 20-working day

statutory deadline.  5 U.S.C. § 552(a)(6)(A)(ii).

36.     Instead, on January 21, 2020, after the deadline passed, the DOJ Office of

Information Policy ("DOJ OIP") sent a letter by email to Plaintiffs regarding the administrative

appeal.  In the email, the DOJ OIP stated that the "unusual circumstances" timeline under 5 U.S.C.

§ 552(a)(6)(B)(i)-(iii) applied to the FITF Request because it "require[d] the need to search for,

collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request."[19]

37.     The DOJ OIP letter further stated that the agency had determined that Plaintiffs' request for expedited processing was denied because Plaintiffs failed to meet their burden to show that the subject of the request is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16(e)(1)(iv).

38.     The DOJ OIP letter also stated that there had not yet been an adverse determination by the FBI as to whether it would produce the information requested, and therefore there was no further action for the DOJ to consider on appeal.

39.     Finally, the DOJ OIP letter stated that the FBI had assured the DOJ that it is processing the FITF Request.  The letter did not state the anticipated date of completion of processing, nor did it state when the FBI will produce documents responsive to the FITF Request.

**CLAIMS FOR RELIEF**

**Count I**

**<u>Violation of FOIA 5 U.S.C. § 552</u>**

40.     Plaintiffs repeat and re-allege the foregoing allegations as if set forth herein verbatim.

41.     The FBI failed to comply with the requisite statutory periods that govern compliance under FOIA with respect to Plaintiffs' FITF Request.  5 U.S.C. §§ 552(a)(6)(A)(i),

---

[19] FOIA requires that an agency (1) determine whether it will comply with a record request within 20 working days of receipt and (2) immediately notify the requester of the determination. 5 U.S.C. § 552(a)(6)(A)(i).  In cases of "unusual circumstances," the deadline may be extended up to 10 additional days. 5 U.S.C. § 552(a)(6)(B)(i).  The unusual circumstance extension must be communicated in writing to the requester. *Id.*

552(a)(6)(A)(ii). The FBI has thus violated its obligations by failing to make a determination in the time required and by wrongfully withholding information from Plaintiffs.

42.     Practical difficulties such as budgetary and personnel constraints do not excuse the FBI from complying with FOIA's statutory mandates.

43.     An agency's failure to respond within the statutory time limits constitutes constructive exhaustion of administrative remedies and is subject to immediate judicial review. *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 546 (S.D.N.Y. 2018); *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182–83 (D.C. Cir. 2013).

44.     Plaintiffs have exhausted all required administrative remedies both through its appeal and through constructive exhaustion.

45.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by the FBI of said right.

## Count II

## <u>Violation of FOIA 5 U.S.C. § 552</u>

46.     Plaintiffs repeat and re-allege the foregoing allegations as if set forth herein verbatim.

47.     The FBI also failed to comply with the expedited processing deadlines properly requested by Plaintiffs. Under the statute, the "determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I).

48.     The FBI did not provide an expedited request determination within the required

statutory period.  Plaintiffs were first notified that that their request for expedited processing had

been denied in the untimely DOJ response to Plaintiffs' administrative appeal.

49.     An agency's failure to respond in a timely manner to an expedited request is subject

to judicial review. *Brennan Ctr. for Justice*, 300 F. Supp. 3d at 547.

50.     FOIA requires expedited processing of requests if the relevant party demonstrates

a compelling need for the materials.  5 U.S.C. § 552(a)(6)(E)(i).

51.     A "compelling need" encompasses "request[s] made by a person primarily engaged

in disseminating information" that relate to an issue to which there is an "urgency to inform the

public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v)(I-

II).  Expedition is also appropriate when there is "widespread and exceptional media interest" in

the matter that presents "possible questions about the government's integrity that affect public

confidence."  28 C.F.R. § 16.5(e)(1)(iv).

52.     As stated in the FITF Request, there has been considerable media coverage about

the FBI's FITF, and Plaintiffs seek the requested documents in order to produce and publicly

disseminate a report on the FITF program and its ability to adequately combat election

interference, as well as its potential to infringe on the First Amendment rights and personal privacy

of U.S. residents.  The FBI has thus violated its obligations by denying expedited processing

requested by Plaintiffs.

53.     Practical difficulties such as budgetary and personnel constraints do not excuse

Defendant from complying with FOIA's statutory mandates.

54.     Plaintiffs have exhausted all required administrative remedies.

55.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by the FBI of said right.

## Count III

### Violation of FOIA 5 U.S.C. § 552

56.     Plaintiffs repeat and re-allege the foregoing allegations as if set forth herein verbatim.

57.     The FBI's projected production timeline constitutes a *de facto* denial of Plaintiffs' FITF Request, violates FOIA's prompt production requirements, and results in an unlawful withholding of non-exempt documents.  *See Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 246 (D.D.C. 2017).

58.     The FBI told Plaintiffs that the expected completion date for the FITF Request was 1,432 days (nearly 4 years) from the opening of the request.

59.     The U.S. government's response to the attempted influence of foreign actors in U.S. elections is a matter of widespread public interest and concern, especially in the run-up to the 2020 presidential election.

60.     Plaintiffs have an urgent need for the requested documents in order to provide information to the public.  A delay of nearly four years will render the FITF Request utterly pointless.  Therefore, the FBI's projected production timeline amounts to a constructive denial of the parties' request for documents to which they are entitled.

61.     Unreasonable delays in disclosing non-exempt documents violate the intent and purpose of FOIA and may obviate the value of the information sought.

62.     Plaintiffs have exhausted all required administrative remedies.

63.     Plaintiffs have a legal right under FOIA to obtain the information they seek, and there is no legal basis for the denial by the FBI of said right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs the Brennan Center and DRAD pray that the Court grant the following relief:

(1)     Order the FBI to conduct a thorough search for any and all records responsive to Plaintiffs' FOIA requests and demonstrate that it employed search methods reasonably calculated to uncover all records responsive to each request;

(2)     Order the FBI to promptly produce, by a date certain, all nonexempt documents or portions of documents that are responsive to the requested information, including any such items referred to other Government agencies, in their entirety and make copies promptly available to Plaintiffs;

(3)     Order the FBI to promptly provide an index pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and its progeny, inventorying all responsive records and itemizing and justifying all withholdings of responsive documents;

(4)     Order the FBI to certify that all responsive records have either been produced or inventoried on the FBI's *Vaughn* index;

(5)     Enjoin the FBI from failing or refusing to produce all non-exempt records responsive to Plaintiffs' FOIA request or otherwise demonstrate that requested records are exempt from production within the time period required by FOIA or, in the alternative, within a reasonable period of time;

(6)     Enjoin the FBI from charging Plaintiffs search, review, processing, and duplication fees in connection with responding to the Requests;

14

(7)     Expedite this action in every way pursuant to 28 U.S.C. § 1657(a);

(8)     Award Plaintiffs reasonable costs and attorneys' fees as provided for in 5 U.S.C. §

552(a)(4)(E), 5 U.S.C. § 552a(g)(1) and/or 28 U.S.C. § 2412(d); and

(9)     Such other and further relief as the Court may deem just and proper.


This 4th day of February, 2020.


Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

/s/ Francis X. Nolan, IV
Francis X. Nolan, IV
1114 Avenue of Americas
The Grace Building, 40th Floor
New York, New York 10036
Telephone:  (212) 389-5083
Facsimile:  (212) 389-5099
franknolan@eversheds-sutherland.com

Andrea L. Gordon (*pro hac vice* application to be filed)
700 Sixth Street, N.W., Suite 700
Washington, D.C. 20001
Telephone:  (202) 383-0955
Facsimile:  (202) 637-3593
andreagordon@eversheds-sutherland.com

*Counsel for Plaintiffs The Brennan Center for Justice
at the New York University School of Law and Defending
Rights & Dissent*